**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **National Collegiate Rugby Inc.** | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **CASE NO. 1:25-cv-00269-RP** |
| | § | |
| **JAMIE MCGREGOR, DIRECTOR OF** | § | |
| **TRAINING & EDUCATION USA** | § | |
| **RUGBY AND USA RUGBY** | § | |
| *Defendants.* | § | |

**NATIONAL COLLEGIATE RUGBY INC.'S RESPONSE TO DEFENDANT'S MOTION
TO STAY AND COMPEL ARBITRATION AND MEMORANDUM OF LAW**

Now Into Court, comes Plaintiff, National Collegiate Rugby Inc. ("NCR"), and files its

and files its Response to Defendants USA Rugby and Jamie McGregor's (hereinafter collectively

referred to as "USA Rugby") Motion to Stay and Compel Arbitration.

## I.      INTRODUCTION

USA Rugby's Motion to Stay and Compel Arbitration cites F,R,C,P. Rule 42 in its lead in

paragraph but that rule has nothing to do with either a stay of trial proceedings or arbitration. In

fact, the USA Rugby motion is devoid of any case law or statutory citations supporting either a

stay or mandatory arbitration for the claims raised by NCR. While the Federal Arbitration Act, 9

U.S.C.A. 1 et seq, does provide a mechanism for stays and arbitrations in a contract dispute, there

is no contract in the dispute between NCR and USA Rugby.

USA Rugby's motion apparently desires to magically convert the permissive and voluntary

dispute resolution language in the Ted Stevens Olympic Amateur Sports Act, 36 U.S.C.A. 220527

("Ted Stevens Act" or "TSA") into one that mandates arbitration. The TSA contains no

"mandatory" arbitration language. And, USA Rugby's argument to the contrary is disingenuous at

best.

Rather, the voluntary dispute resolution provisions of the TSA do not even apply to the primary statutory interpretation and state law claims and focus of NCR's complaint. A simple fact that USA Rugby has chosen to avoid mentioning in its motion. Instead, USA Rugby has chosen to inject unrelated issues in hopes it can distract the court's attention away from the core issues presented by NCR's complaint, as well as delay these proceedings.

A prime example, USA Rugby purposively ignores discussing the clear and unambiguous language of the TSA section 220527(a) that an amateur sports organization, such as NCR, ***cannot*** file a complaint to seek to compel a national governing body ("NGB"), like USA Rugby, to comply with either section 220523 or 220526. TSA section 220523 deals with USA Rugby's "authority" as an NGB and TSA section 220526 deals with the "exclusive jurisdiction" of NCR over its collegiate athletic competitions.

As USA Rugby's motion acknowledges, even a cursory review of NCR's complaint readily shows that the foundation of many of NCR's claims are based on USA Rugby's overwhelming over-reach of its alleged statutory authority and claimed jurisdiction over NCR's competitions. So, under the Ted Stevens Act, NCR could not have filed a complaint against USA Rugby for its abuse of its "authority" or its violation of NCR's "exclusive jurisdiction." In turn, logic would lead one to conclude that, if NCR could not even file a complaint on these issues, it could not be forced into arbitration. Under these provisions, this Court is the only venue for the resolution of disputes.

After making its misdirected argument, USA Rugby attempts to bolster its position by praising a non sequitur argument that the Ted Stevens Act does not allow a private right of action for NCR's claims. First, this argument has nothing to do with either the requested stay or the motion to compel an arbitration. Second, the cases cited by USA Rugby deal with international "eligibility" issues regarding the Olympics which clearly fall within the purview of the TSA and

have nothing to do with the state law claims raised by NCR.[1]

USA Rugby's motion does not claim that NCR's claims are preempted but, rather, before the claims can be filed with the court, the prerequisite is that they must first be filed in the dispute resolution process and then arbitration. (Rec. Doc. 23 at p.5 para 12.). In this context, USA Rugby argues that NCR's claims regarding USA Rugby's failure to comply with the TSA "does not give them standing" in federal court and NCR must submit to arbitration. (Rec. Doc. 23 at p.5 para 10).[2]

However, this argument cannot withstand close scrutiny because the dispute resolution processes of the TSA would not even allow NCR to even file a complaint against USA Rugby or Mr. McGregor based on its state law claims. So, contrary to USA Rugby's claim of due process under the TSA, their interpretation would deny NCR its rights.

Should USA Rugby attempt to convert this motion into another type of motion to raise the preemption issue as a substantive matter, the case law cited by USA Rugby is instructive. While the bulk of USA Rugby's motion focuses on the antitrust decision in *Behagen v. Amateur Basketball Ass'n of U.S.,* 884 F.2d 524,528 (10th Cir. 1989), the motion also cites the U.S. Fifth Circuit's decision in *Eleven Line Inc v. N. Texas State Soccer Ass'n, Inc.,* 213 F. 3d 198, 204, for its "adoption" of the *Behagan decision.(Rec Doc. 23 at p.5 para. 11). In the Eleven Line* case, the Fifth Circuit found that the Ted Stevens Act (referred to as the ASA in that decision) did not exempt the defendant from antitrust scrutiny. *Id.* at 205. The footnote to this finding is very instructive in this case–"(f)or similar reasons, PBSC's **state law claims are not preempted** by the

---

[1] Of note, the no private right of action argument has been raised by USA Rugby in its motion to dismiss in the Hale and Micheletti litigation as a preemption defense.  Here, it was raised as an affirmative defense against NCR in the Defendants' answers.

[2] The use of the term "standing" is baffling because certainly NCR is the proper party to bring its federal question/statutory dispute before this court, as well as the related state law claims.

ASA. The ASA has not totally occupied the field, and **the state law claims are not inconsistent with the ASA's statutory scheme."**(emphasis added). *Id.* at 205, FN 12.

The Fifth Circuit's holding in *Eleven Line* would render any attempt by USA Rugby in its reply to NCR's response to convert this motion into a preemption argument moot.

## II.     ARGUMENT & AUTHORITIES

On balance, USA Rugby's Motion to Stay and Compel Arbitration is without merit. Rather than attempting to apply the facts of the statutory and/or state law disputes between NCR and USA Rugby and the controlling law, the Ted Stevens Act, or even trying to argue a change or expansion of the law, USA Rugby ignores the TSA's clear language and cites cases which have little to no bearing on NCR's claims before the court or their requested relief. Likewise, the motion attempts to inject a "no private right of action" argument which has no bearing on the requested stay or arbitration into the motion. If anything, the cases cited by USA Rugby support NCR's position that the Ted Stevens Act does not preempt its state law claims.

## A.  THE TED STEVENS ACT DOES NOT MANDATE ARBITRATION.

To start with and as the court is well aware, the one federal statute which mandates arbitrations concerns contract disputes, 9 U.S.C.A. 3 et seq. which we do not have in the case at bar. USA Rugby does not and cannot cite a single statutory provision or case which states that the Ted Stevens Act "mandates" arbitration, as a prerequisite to filing this matter.

The next point of analysis is the general purpose of the Ted Stevens Act which is to facilitate the issues arising out of and around the Olympics, Paralympics and other international amateur athletic competitions. Turning to the resolution of dispute provision of the Ted Stevens Act, 220509(a), this provision governs the disputes of athletes, coaches and others to

**"participate"** in the Olympics and other similar international amateur events. There are no other stated statutory mandates beyond Olympic participation.

In the case at bar, NCR has not raised a single claim concerning participation in the Olympics and/or any other similar international amateur athletic competitions.[3] Addressing whether or not NCR is required to file a complaint against USA Rugby and, in turn, seek arbitration, the clear language of TSA 220527(a) uses the term "may seek to compel" which is permissive, not mandatory. Had Congress wanted to grant the USOPC the power to mandate either mediation or arbitration to resolve the various disputes, it could have readily done so but it chose to not provide such power or strip such rights away from an aggrieved party. Absent such specific statutory wording, NCR does not need to engage in any protracted statutory analysis of this provision.[4]

Beyond TSA 220527(a)'s permissive language are the specific limitations in the provision as to what can be filed as a complaint against a NGB. Under TSA 220527(a), one can only file a complaint to compel an NGB to comply with three sections 220522(eligibility requirements for an NGB), 220524(general duties of an NGB) & 220525(granting sanctions for amateur athletic competitions).

However, TSA 220527(a) ***does not*** allow NCR to file a complaint against USA Rugby under either section 220523 (authority of an NGB) or 220526 (exclusive jurisdiction). Nor does this section allow for NCR to file any complaint based on any state law claims.

---

[3] The Ted Stevens Act defines "international amateur athletic competitions" as matches between individuals or teams representing the USA and other foreign nations. TSA220501(b)(8).

[4] One example of a more detailed statutory analysis to contradict USA Rugby's arbitration argument is TSA220505(b)(9) which states that the USOPC can be sued in state court and, if needed, the case can be removed. No mention of submitting to arbitration first.

Since TSA 220526 grants "exclusive jurisdiction" to NCR, as a college amateur athletic association, over its competitions to the exclusion of USA Rugby, it is an obvious focal point of NCR's complaint. And, if this claim cannot be the subject of a complaint under the TSA, the only venue is this court.

Equally as important, TSA section 220523 deals with a NGB's "authority." Under 220523(a)(5), USA Rugby does have the general ability to establish "eligibility" procedures for amateur athletic competitions. However, 220523(a)(5) specifically restricts this "authority" by excluding competitions specified in 220526, i.e. NCR's competitions within its exclusive jurisdiction. Once again, if USA Rugby's "authority" under TSA 220523 cannot be the subject of a complaint under the TSA, the only venue is this court.

As for the arbitration provision found in TSA 220529 cited by USA Rugby in its motion, this provision is not applicable. First, the language of this arbitration section does not mandate arbitration but, again, uses the permissive term "may obtain review by arbitration and mediation." Second, TSA 220529(a) allows for the review of determinations by the USOPC under TSA 220527 or 220528. Since 220528 is not applicable, the court needs to return to an analysis of 220527. And, once again, TSA 220527 does not allow NCR to file a complaint against USA Rugby under either TSA 220523 or TSA 220526 or the various state law claims. Therefore, since NCR cannot file a complaint regarding these claims, the USOPC cannot make any determinations for those provisions which can be submitted for arbitration.

In the introduction to its motion, USA Rugby notes that NCR has presented multiple different claims that USA Rugby was "acting beyond the ***scope of its authority*** established under the Ted Stevens Act." (Rec. Doc. 23 at p.1 para.1). While mislabeling NCR's claims as "misguided," the statement is basically correct. After making this admission, USA Rugby goes on

to argue that NCR's lawsuit should be stayed and it should be compelled to arbitrate before proceeding further in this court.

A significant problem with this argument is that the Ted Stevens Act does not allow NCR to even file a complaint against USA Rugby to compel it to comply with the NGB "authority" section, 220523, of the Act or to recognize NCR's exclusive jurisdiction under 220526. So, the question to USA Rugby is simple, if NCR cannot even file a complaint under the TSA against USA Rugby over its acting beyond the scope of its authority or NCR's exclusive jurisdiction, how can it be forced to arbitrate under the Act? The answer is simple-NCR cannot be forced to arbitrate.

### B. THE TED STEVENS ACT DOES NOT PREEMPT NCR'S CLAIMS.

The next section of USA Rugby's motion is labelled "The Ted Stevens Act Gives No Private Right of Action for NCR's Claims." However, this "no private right of action" label is another attempt at misdirection because the actual "no private right of action" language of the Ted Stevens Act has nothing to do with either a stay or arbitration. TSA 220505(b)(8).

A more detailed analysis of this clause's language and its intended scope is set forth below. Before this analysis, a closer look at the substance of USA Rugby's current motion is warranted. In this section of the motion, USA Rugby argues that NCR's complaint states that USA Rugby has exercised too much authority over amateur rugby competitions and the TSA does not "create independent claims under the law separate from the Ted Stevens Act.(Rec. Doc. 23 at p. 4 para7). Of note, USA Rugby's argument avoids addressing the multiple state law claims made by NCR's complaint which are clearly independent of the TSA. As already noted, NCR's state law claims are not subject to the dispute resolution/arbitration procedures of the TSA.

Likewise, USA Rugby's argument also meticulously avoids any discussion of NCR's complaint's specific requests for the court's statutory interpretation of various provisions of the

TSA and their application to the issues raised by NCR's complaint. Once again, a specific request by NCR which clearly falls outside the purview of the USOPC's limited authority under the TSA and its equally limited dispute resolution processes.

After its lead in paragraph, USA goes into a somewhat detailed analysis of the Tenth Circuit's decision in *Behagen v. Amateur Ass'n of U.S.*, 884 F.2d 524,528 (10th Cir. 1989). The *Behagen* case is neither controlling nor persuasive to the NCR's claims before this court. First, *Behagen* is an antitrust case dealing with an Olympic eligibility issue of a professional basketball player who wanted his amateur status reinstated so that he could participate in the Olympics. In *Behagen* and despite the lack of clear statutory language, the court inferred an exemption from the antitrust laws by extrapolating the intent of Congress over the control needed for participation in the Olympics. *Id.* at 529.

As for USA Rugby's motion, the *Behagen* court did not hold that the dispute resolution or arbitration provisions were mandatory. In the case at bar, there are no antitrust issues and no Olympic eligibility issues. As discussed below, the Olympic eligibility issue is a key difference from all the cases cited by USA Rugby.

In the closing portion of this section of the motion USA Rugby cites the Fifth Circuit's decision in *Eleven Line, Inc. v. N. Texas State Soccer Ass'n., In*c., 213 F.3d 198, 204 (5th Cir. 2000) as "adopting" the *Behagen* decision. While the *Eleven Line* court did state that *Behagen* was "correctly decided", it found that the TSA ( referred to as ASA in the decision) did not exempt the party from antitrust scrutiny. *Id*. at 205.

More important to the pending motion and NCR's case is found in footnote 12 of the *Eleven Line* decision. *Id*. at 205. In this footnote, the court held "(f)or similar reasons, PBSC's **state law**

**claims are not preempted by the ASA.** The ASA has not totally occupied the field, and the **state law actions are not inconsistent with the ASA's statutory scheme**."(emphasis added). *Id.*

The Fifth Circuit's holding in *Eleven Line* leads us into the more detailed analysis of the "no private right of action" argument of USA Rugby in the motion before the Court. The following is an abbreviated restatement of NCR's argument in its motion for partial summary judgment for ease of reference.

In this case**,** USA Rugby's answer raised an affirmative defense that, under the TSA, NCR's state law claims against them are allegedly preempted. NCR submits that this preemption defense and argument ignores the clear language of the TSA and misapplies the case law.

USA's preemption defense relies on the language of TSA 220505(b)(9) which purportedly states that there is no "private right of action" under the Act. A closer examination of this provision is warranted.

TSA Section 220505(b) addresses the "general corporate powers" of the USOPC and states that "**the corporation may**….(9) **sue and be sued**, except that any civil action brought in State court against the corporation and **solely relating to the corporation's responsibilities under this chapter shall be removed**, at the request of the corporation, to the district court of the United States in the district where the action is brought, and such district court shall have original jurisdiction over the action without regard to the amount in controversy or citizenships of the parties involved and, except that **neither this paragraph or any other provision of this chapter shall create a private right of action <u>under this chapter;</u>**". (emphasis added).

To start with, TSA 220505 addresses the "powers and duties" of the "corporation." TSA 220501(b)(7) defines the "corporation" as the USOPC. This definition does not include a NGB, a

separate legal entity. And, the "no private right of action" language found in 220505(b)(9) for the USOPC is not restated in the section on the general duties of a NGB. TSA 220504. Accordingly, there is no specific provision in the TSA which specifically states that there is no private right of action against a NGB.

A close review of 220505 also shows that it does not state that it "preempts" any law. On the contrary, the clear limiting language in the section states: "**(n)othing in this section shall be construed to _preempt_ or otherwise abrogate the duty of the corporation <u>under State law or the common law</u>.**" TSA 220505(d)(3)-Rules of Construction (emphasis added). Nearly identical limiting language applies to a NGB's "general duties." TSA 220524(b).

Moreover, none of the cases cited by USA Rugby to date in other matters, Messrs. Hale or Micheletti, have analyzed or interpreted the no preemption or abrogation language of TSA 220505(d)(3) or 220524(b). In fact, it appears that NCR's request for the interpretation of TSA 220505(d)(3) and 220254(b) is one of first impression.

Accordingly, an expanded analysis of USA Rugby's preemption of all of NCR's state law claims argument is required. Once again, the language of the statute seems to contradict the argument because it states that the corporation "may sue and be sued" and a civil action in state court can be removed. TSA 220505(b)(9). This language expressly allows suits to both be brought against the USOPC and, if brought in state court, to be removed to federal court. Logic would mandate those suits would be based on state, common and federal law claims.

The cornerstone language for USA Rugby's argument appears to pivot on the language at the end of the section "...neither this paragraph or any other provision of this chapter shall create a private right of action **<u>under this chapter.</u>**" TSA220505(b)(9)(emphasis added).

Applying this "under this chapter" language to NCR's state law claims of defamation, tortious interference in contract/business relationships, fraud by omission and deceptive trade practices would show that, as they relate to NCR, all of USA Rugby's acts or omissions are well outside of the TSA and do not arise "under the chapter." Nor do any of NCR's state law claims suggest that they are based on the TSA.

While NCR is certainly moving the court for the statutory interpretation of the Act, the requested interpretation shows, if anything, that NCR's state law claims do not arise "under this chapter." Rather, NCR's exclusive jurisdiction granted to it by the Ted Stevens Act allows it to sanction its own matches and determine its own eligibility procedures for its championships and events; all of which would result in falling outside of "this chapter."

At this juncture, USA Rugby's reply to NCR's response may attempt to argue that NCR claims that USA Rugby interfered with their eligibility determination of officials at NCR championships and, therefore, those claims fall within the preemption defense. This misguided argument, however, returns us to the limited eligibility authority granted USA Rugby under the TSA over the Olympics and other international amateur athletic competitions discussed in the motion for summary judgment and the exclusive jurisdiction granted NCR over its own eligibility determinations under TSA 220523(a)(5); all of which take the issue outside of the Act.

Interestingly, NCR expected USA Rugby to cite *Pliuskaitis v. USA Swimming Inc., 243 F. Supp. 3d 1217(D. Utah 2017)* which found that the state law claims of the plaintiff were preempted because "each of Plaintiff's claims at their core challenged USA Swimming's revocation of his eligibility to coach." *Id. at 1225.* The court found that Congress had given exclusive jurisdiction over dispute resolution over eligibility issues to USA Swimming. *Id. at 1227.* Here, USA Rugby

has not raised the dispute resolution procedures of the TSA as a defense against NCR for a good reason—they don't apply.[5]

However, *Pliuskaitis* is both factually and legally distinguishable from the case at bar. In *Pliuskaitis,* the plaintiff was a swimming coach who had a complaint for sexual misconduct filed against him during a divorce. The USA Swimming review board and board of directors ruled against him and banned him for life. He filed for arbitration and obtained a favorable ruling. In turn, he filed his lawsuit and set forth various state law claims, including defamation. However, the state law defamation claim was dismissed because it was time barred under the statute of limitation, not due to preemption. *Id. at 1228. Pliuskaitis* held that the TSA gave a NGB authority over the dispute resolution procedures for Olympic eligibility determinations which arose under the Act.

Moreover, *Pliuskaitis* cites *Lee v. U.S. Taekwondo Union, 331 F. Supp. 1252 ,1257(DC HI 2004) Id. at 1224* in its analysis. The *Lee* case was another eligibility case which also included discrimination claims under 42 U.S.C. 1981 that was allowed to proceed by that court because it was not under the Act. As the *Lee* court stated "the USOC may be sued only with respect to matters **not arising** under the Amateur Act, such as, for example, with respect to a dispute over a lease that the USOC may have signed with the landlord or its office" *Id. at 1257*. (emphasis added). Accordingly, the Olympic eligibility cases cited by USA Rugby do not control this court's determination of NCR's claims. Nor do these cases address the stay or arbitration substance of USA Rugby's motion and, as such, the motion should be denied.

### III.    CONCLUSION

---

[5] TSA 220527 only allows for complaints against a national governing body, such as USA Rugby, under sections 220522,220524 & 220525. It does not provide for filing a complaint for violations of either section 220523(NGB authority) or 220526(NCR exclusive jurisdiction).

For the foregoing reasons, NCR respectfully submits that Defendants' motion to stay and compel arbitration is neither supported by the specific provisions of the TSA which limit the scope of the dispute resolution and arbitration processes or the specifics of NCR's state law claims or its request for the court's statutory interpretation of the Ted Stevens Act. Accordingly, NCR requests the court deny the motion and for further relief as equity and justice require.

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH, LLP

*/s/ Gregg E. Clifton*
**GREGG E. CLIFTON**
Arizona Bar No. 028893
Gregg.Clifton@lewisbrisbois.com
Phoenix Plaza Tower II
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012-2761
(602) 385-1040—Telephone
(602) 385-1051—Facsimile

-and-

**MATTHEW R. BEGLEY**
Texas Bar No. 24076265
Matthew.Begley@lewisbrisbois.com
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767—Telephone
(713) 759-6830—Facsimile
**ATTORNEYS FOR PLAINTIFF,**
**NATIONAL COLLEGIATE RUGBY, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing document pursuant to the Federal

Rules of Civil Procedure on this 13th day of June, 2025.

/s/ Matthew R. Begley
**MATTHEW R. BEGLEY**


**CERTIFICATE OF COMPLIANCE**

The undersigned party certifies that the total number of words in this motion, exclusive of

the matters designated for omission, is 3988 words as counted by Microsoft Word Software.

/s/ Matthew R. Begley
**MATTHEW R. BEGLEY**