IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| NATIONAL COLLEGIATE RUGBY INC., | § § |
| Plaintiff, | § |
| V. | § |
| | §   A-25-CV-269-RP |
| | § |
| JAMIE MCGREGOR, INDIVIDUALLY AND AS DIRECTOR OF TRAINING & EDUCATION FOR USA RUGBY AND THE UNITED STATES OF AMERICA RUGBY FOOTBALL UNION LTD., D/B/A/ USA RUGBY, | § § § § § § |
| Defendants. | § |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Plaintiff National Collegiate Rugby Inc.'s Motion for Partial Summary Judgment for Declaratory Judgment and Memorandum of Law (Dkt. 21) and Defendants Jamie McGregor and USA Rugby's Motion to Stay and Compel Arbitration (Dkt. 23).[1] Defendants' motion is fully briefed, but Defendants have not yet responded to NCR's motion. Having considered the pleadings and the relevant case law, the undersigned submits the following Report and Recommendation to the District Judge.

**I.    BACKGROUND**

National Collegiate Rugby Inc. ("NCR") is an independent college rugby organization that provides rugby related services, such as insurance and membership, and holds various tournaments

---

[1] The motions were referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits or for disposition, as appropriate, pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Orders May 28, 2025.

1

and/or championships. Dkt. 1 (Compl.) ¶ 9(b). NCR has over 630 member colleges/universities and over 18,000 players, coaches, and administrators located throughout the lower 48 states, including Texas. *Id*. Under the "Ted Stevens Olympic and Amateur Sports Act," (the "Act") 36 U.S.C. § 220501, *et seq.,* USA Rugby is the designated national governing body ("NGB") over "international" amateur rugby. Compl. ¶ 23. As such, USA Rugby's bylaws specifically adopted and incorporated the provisions of the Act. *Id*.

NCR alleges that USA Rugby has experienced financial difficulties, including bankruptcy, and to alleviate its financial issues, USA Rugby sought to have NCR member teams and players join USA Rugby as full members so that it could collect dues from the over 600 college teams and their thousands of players. *Id*. ¶¶ 43-50. USA Rugby also sought to capture NCR's other sources of income, including tournament fees, TV and streaming services income and sponsorship income from major events, such as the College Rugby Championship ("CRC"). *Id*. ¶ 51.

NCR alleges that USA Rugby, primarily through Jamie McGregor, the Director of Training & Education at USA Rugby's National Office, has made multiple false, fraudulent and misleading statements to referees and other rugby organizations that NCR's events were "unsanctioned," giving the false impression that NCR's events were disqualifying or unprofessional. *Id*. ¶ 29. McGregor and USA Rugby have threatened that officiating NCR matches will bar any referees from participating in international and USA Rugby matches. *Id*. ¶ 34. McGregor and USA Rugby did this to intimidate the referees and dissuade others from recognizing NCR as a legitimate rugby organization. *Id*.¶ 29. NCR asserts that USA Rugby's threats violate the Act, as well as World Rugby/USOPC/ USA Rugby's policies. *Id*. ¶ 34. NCR further alleges that USA Rugby has demanded unwarranted and highly excessive sanctioning fees for NCR's major events, including a $60,000 sanctioning fee demand for the CRC. *Id*. ¶ 55. NCR alleges that USA Rugby has

continuously and intentionally interfered with NCR's business relationships and contracts, as well as relationships with its member colleges. *Id*.

NCR asserts claims that USA Rugby has violated the Act, *id*. ¶¶ 71-115; has tortiously interfered with NCR's business relationships and contracts, *id*. ¶¶ 116-21; has defamed NCR and committed fraud by omission, *id*. ¶¶ 122-35; and has violated the Deceptive Trade Practices Act, *id*. ¶¶ 136-45. NCR has moved for summary judgment on the Act's scope and application. Dkt. 21. Defendants have moved to stay the case and compel arbitration under the Act. Dkt. 23.

**II.   THE TED STEVENS ACT**

The "Ted Stevens Olympic and Amateur Sports Act," (the "Act") 36 U.S.C. § 220501, *et seq.,* creates a vertical structure for the management of certain amateur sports in the United States. *Eleven Line, Inc. v. N. Texas State Soccer Ass'n, Inc.*, 213 F.3d 198, 203 (5th Cir. 2000). At the head of this vertical structure is the U.S. Olympic Committee ("USOC"), which Congress intended as a coordinating body for amateur sports that Americans compete in internationally. *Id*. At the next level are NGBs for each sport included in the Olympic Games or the Pan–American Games. *Id*. Once established, an NGB has broad authority. *Abdallah v. U.S. Ass'n of Taekwondo, Inc.*, No. CIV.A. H-07-2880, 2007 WL 2710489, at *1 (S.D. Tex. Sept. 14, 2007). In addition to other powers, it may establish national goals for the sport, act as the coordinating body for amateur athletic activity in the United States, conduct amateur athletic competition, and establish procedures for determining eligibility standards. *Id*.; 36 U.S.C. § 220523.

The Act also recognizes "amateur sports organizations"—not-for-profit corporations, associations, or other groups organized in the United States that sponsor or arrange amateur athletic competitions. 36 U.S.C. § 220501(b)(3). "An amateur sports organization that conducts amateur athletic competition shall have exclusive jurisdiction over that competition if participation is

restricted to a specific class of amateur athletes, such as high school students, *college students*, members of the Armed Forces, or similar groups or categories." 36 U.S.C. § 220526(a) (emphasis added). An amateur sports organization must obtain a sanction, or permission, from the appropriate national governing body if the organization wishes to conduct *international* amateur athletic competition in the United States or sponsor *international* amateur athletic competition outside the United States. 36 U.S.C § 220526(b) (emphasis added).[2]

One purpose of the Act is to provide swift resolution of conflicts involving NGBs and amateur sports organizations and, as relevant here, to protect the opportunity of any official to participate in amateur athletic competition. 36 U.S.C § 220503(8). Under the Act, all NGBs agree to submit to binding arbitration any controversy involving the opportunity of an official to participate in an amateur athletic competition. 36 U.S.C. § 220522(4)(b). An amateur sports organization or a person that belongs to or is eligible to belong to an NGB may seek to compel the NGB to comply with sections 220522,[3] 220524,[4] and 220525[5] of the Act by filing a written complaint with the USOC, which has procedures for addressing those complaints. 36 U.S.C. § 220527. Similarly, anyone aggrieved by a USOC decision may obtain review by binding arbitration. 36 U.S.C. § 220529(a), (d).

---

[2] NCR asserts it does not require USA Rugby's sanction under section 220526.
[3] Section 220522 describes the eligibility requirements for an organization to be an NGB and requires an NGB to submit disputes concerning its certification as an NGB and "the opportunity of any amateur athlete, coach, trainer, manager, administrator or *official* to participate in amateur athletic competition" to arbitration. 36 U.S.C. § 220522, (4) (emphasis added).
[4] Section 220524 outlines the duties of NGBs. 36 U.S.C. § 220524.
[5] Section 220525 requires an NGB to sanction (i.e., allow) an amateur sports organization to or person to hold or participate in an international amateur athletic competition unless the NGB determines by clear and convincing evidence that it would be detrimental to the sport's best interest. 36 U.S.C. § 220525.

### III.   ANALYSIS

The parties disagree on whether the Act requires their dispute to be resolved by arbitration. NCR argues the Act does not mandate arbitration and its state-law claims are not subject to the Act.

### A.   Preemption

The Act states, "neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter." 28 U.S.C. § 220505(b)(9). Courts have consistently held that the Act does not create a federal cause of action. *See Gonzalez v. United States Ctr. for SafeSport*, 374 F. Supp. 3d 1284, 1290 (S.D. Fla. 2019) ("section 220505(b)(9) is not a source of federal subject matter jurisdiction in this case"); *Navarro v. United States Ctr. for SafeSport*, No. 3:24-CV-00030, 2025 WL 209166, at *9 (W.D. Va. Jan. 15, 2025) ("The 2020 Amendment did add two provisions to § 220541 clarifying that the Amateur Sports Act does not create a private right of action."); *U.S. Olympic Comm. v. Ruckman*, No. CIV.A.09-4618FLW, 2010 WL 2179527, at *6 (D.N.J. May 28, 2010) ("By stating that 'neither this paragraph nor any other provision of this chapter shall create a private right of action under this chapter . . . . ,' Congress apparently intended to limit the private right of action bar to actions purporting to be rooted in the Sports Act."); *Pliuskaitis v. USA Swimming, Inc.*, 243 F. Supp. 3d 1217, 1224 (D. Utah 2017), aff'd sub nom. *Pliuskaitis v. USA Swimming*, 720 F. App'x 481 (10th Cir. 2018), ("While the Sports Act specifically provides that the USOC (and thus its NGBs like USA Swimming) may sue and be sued in federal court, it also expressly negates the establishment of a private right of action.").

Courts have found the Act not only preempts eligibility challenges brought directly under the Act but also other state law causes of action that essentially sought relief for issues governed by the Act. *Lee v. U.S. Taekwondo Union*, 331 F. Supp. 2d 1252, 1257 (D. Haw. 2004) (citing

5

*Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 596 (7th Cir. 2001)). However, the Act does not expressly supersede other federal statutes. *Lee*, 331 F. Supp. 2d at 1259. A number of courts recognize carve-outs to the Act's exclusive jurisdiction. *Slaney,* 244 F.3d 580 (finding RICO and conspiracy allegations not preempted); *Abdallah*, 2007 WL 2710489, at *1; *Lee,* 331 F. Supp. 2d at 1252 (rejecting the Act's preemption of federal civil rights laws, specifically race discrimination in violation of § 1981); *Akiyama v. U.S. Judo Inc.,* 181 F. Supp. 2d 1179 (W.D. Wash. 2002) (holding Title II of Civil Rights Act of 1964 applied to prevent discrimination on basis of religion at judo competition); *Sternberg v. USA Nat'l Karate-Do Fed'n, Inc.,* 123 F. Supp. 2d 659 (E.D.N.Y. 2000) (proceeding on a Title IX claim against karate national governing body based on organization's decision to withdraw women's karate team from international competition). Thus, the Act does not preempt any federal claims a party might bring.

NCR argues that its state-law claims are not subject to the Act's dispute resolution procedures. However, all of its state-law claims turn on whether USA Rugby has overstepped its authority under the Act. Accordingly, they are preempted by the Act.

**B.     Arbitration**

NCR argues the Act's dispute resolution processes are voluntary and only disputes over Olympic eligibility have been subjected to mandatory arbitration. NCR argues section 220527(a), which allows an amateur sports organization to file a complaint against an NGB, uses the permissive word "may." 36 U.S.C. § 220527(a) ("An amateur sports organization or person that belongs to or is eligible to belong to a[n] [NGB] *may* seek to compel the national governing body to comply with sections 220522, 220524, and 220525 . . . .") (emphasis added). NCR further argues the "Act does not allow NCR to even file a complaint against USA Rugby to compel it to comply

with the NGB 'authority' section, 220523, of the Act or to recognize NCR's exclusive jurisdiction under 220526." Dkt. 24 at 7. Notably, NCR cites no cases to support its argument.

First, neither statutory law nor case law supports NCR's assertion that the Act's dispute resolution provisions only apply to Olympic eligibility disputes. One of the USOC's purposes is "to provide swift resolution of conflicts and disputes involving . . . national governing bodies, and amateur sports organizations, and protect the opportunity of any amateur . . . official to participate in amateur athletic competition." 36 U.S.C. § 220503(8); *Lee*, 331 F. Supp. 2d at 1255. "[T]he thrust of the [] Act is to provide the USOC with authority to coordinate and regulate amateur athletics and amateur sports organizations, including NGBs. Congress designed the Act to correct the disorganization and the serious factional disputes that seemed to plague amateur sports in the United States." *Ohio Taekwondo Ass'n v. U.S. Olympic Comm.*, No. 2:05-CV-0230, 2005 WL 1198861, at *7 (S.D. Ohio Apr. 20, 2005) (cleaned up).

Second, under section 220257, NCR could seek to compel USA Rugby to comply with section 220522(4)(b),(8) and to stop discriminating against NCR officials. *See* 36 U.S.C. §§ 220257(a)(1) ("An amateur sports organization or person that belongs to or is eligible to belong to a national governing body may seek to compel the national governing body to comply with sections 220522"); 36 U.S.C. § 220522(4)(b) (requiring an NGB to submit to arbitration any aggrieved person's denial of opportunity to participate), (8) (requiring an NGB to provide an equal opportunity to participate in amateur athletic competitions). Under section 220529(a), if NCR is dissatisfied with those outcomes, it can seek arbitration. 36 U.S.C. § 220529(a) ("A party

aggrieved by a determination of the corporation under section 220527 . . . may[6] obtain review by [] arbitration").

Case law supports this interpretation. "The Act provides a three-tiered mechanism for asserting a complaint against an NGB for any failure to comply with its obligations under the Act. *Ohio Taekwondo*, 2005 WL 1198861, at *5 (citing 36 U.S.C. §§ 220527, 220529). First, the complainant must exhaust all administrative remedies within the NGB. *Id.* (citing 36 U.S.C. § 220527(b)). Second, the complainant may file a complaint with the USOC. *Id.* (citing 36 U.S.C. § 220527(a)). Third, the complainant may obtain review of an adverse decision by the USOC by the American Arbitration Association. *Id.* (citing 36 U.S.C. § 220529(a)). "[T]his comprehensive scheme is clear evidence of Congressional intent to require exhaustion of the remedies the Act provides. *Id.* at *7; *see also Walker v. USA Swimming, Inc.*, No. 3:16-0825, 2017 WL 782970, at *5 (M.D. Tenn. Mar. 1, 2017) ("the Sports Act, a federal statute, mandated arbitration as Walker's only form of available appeal from USA Swimming's disciplinary process"); *Haney v. USA Gymnastics, Inc.*, No. CV 21-07213, 2022 WL 909871, at *3 (D.N.J. Mar. 29, 2022) ("Rather, the Sports Act mandates that challenges against national governing bodies must proceed through arbitration."); *Ruckman*, 2010 WL 2179527, at *1 ("The Sports Act mandates that challenges against national governing bodies proceed through arbitration. *See* 36 U.S.C. § 220509; *Amateur Softball Ass'n of America*, 768 F. Supp. 618, 624–25 (S.D. Oh. 1991) (describing the Sports Act's mandatory exhaustion requirement)").

Indeed, as previously discussed, the Act expressly states that its provisions do not create a private cause of action. *See* 36 U.S.C. § 220505(b)(9); *Ruckman*, 2010 WL 2179527, at *6.

---

[6] NCR argues this "may" is permissive and therefore arbitration is not the only method of appeal. Dkt. 24 at 6. The court disagrees. No case law supports this reading. If the statute were to use the mandatory "shall," it would force aggrieved parties to arbitrate when perhaps they would prefer to no longer pursue the issue.

Accordingly, NCR's only option is to pursue its dispute with USA Rugby within the procedures set by the Act, as described above. Defendants ask the court to stay this case and order it be arbitrated, but Defendants offer the court no basis for its authority to do that. As NCR's state claims are preempted and the Act does not provide a private cause of action, the undersigned will recommend this action be dismissed.

### IV.  MOTION FOR SUMMARY JUDGMENT

As the undersigned has determined this case should be dismissed, the court does not reach NCR's summary judgment motion. The undersigned recommends it be dismissed without prejudice.

### V.  RECOMMENDATIONS

The undersigned further **RECOMMENDS** that the District Judge **DISMISS without prejudice** Plaintiff National Collegiate Rugby Inc.'s Motion for Partial Summary Judgment for Declaratory Judgment and Memorandum of Law (Dkt. 21), **DISMISS without prejudice** Defendants Jamie McGregor and USA Rugby's Motion to Stay and Compel Arbitration (Dkt. 23), and **DISMISS** this case **with prejudice**.

### VI.  OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED June 26, 2025.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE